IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES HYMES, III and PAULINE HYMES, | : |
| Plaintiffs, | : CIVIL ACTION |
| v. | : NO. 11-248 |
| GREAT LAKES WAREHOUSE, et al., | : |
| Defendants. | : |

MEMORANDUM

TUCKER, C.J.                                                                                      March _____, 2014

Presently before the Court are Defendant Transportation Investment Group's Motion for Summary Judgment (Doc. 48), Plaintiffs James Hymes, III and Pauline Hymes' Response in Opposition (Doc. 50), Defendant's Response in Support of Motion for Summary Judgment (Doc. 51), and Plaintiffs' Sur-Reply (Doc. 52). Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 48) is **GRANTED**.

I.   **FACTS AND PROCEDURAL BACKGROUND**[1]

Because the Court writes primarily for the parties, the Court sets forth only those facts that are relevant to its conclusion. On or about November 28, 2007, Defendant Transportation Investment Group, L.P. ("TIG") entered into a triple-net lease with Team Hardinger Transportation ("Hardinger") to lease premises located at 1664 Greengarden Road, Erie, Pennsylvania 16501 ("1664 Greengarden"). (Def.'s Mot. for Summ. J. ¶ 3, 6; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 3, 6.)

---

[1] The facts described herein are undisputed unless otherwise noted. When in dispute, all reasonable inferences will be drawn in the Hymeses' favor as the non-moving party.

1

The lease gave TIG the right to inspect the property leased by Hardinger. (Def.'s Mot. for Summ. J. ¶ 7; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 7.) The only individuals from TIG that were given authority to inspect the leased property were Joseph and Raymond Benacci. (Def.'s Mot. for Summ. J. ¶ 8; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 8.) TIG had a verbal policy with their tenants that the tenants were solely responsible for keeping the parking areas, walkways, and steps leading to their premises free from snow and ice. (Def.'s Mot. for Summ. J. ¶ 10; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 10.) TWP Corp. is a separate company from TIG, and employed Herbert and James Budd to perform maintenance, including snow and ice removal for the common areas of TIG properties, including the subject property at 1664 Greengarden. (Def.'s Mot. for Summ. J. ¶ 12, 16; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 12, 16.)

Plaintiffs claim that truck driver James Hymes, III ("Mr. Hymes") suffered serious injuries, when on or about January 19, 2009, he was caused to slip and fall due to the presence of ice and snow outside a warehouse facility located on the premises of 1664 Greengarden. (Compl. ¶ 12.) At the relevant time, the area where Mr. Hymes fell was owned by TIG. (Compl. ¶ 42; Def.'s Answer ¶ 42.) Snow had stopped falling in the area approximately 15 minutes before Mr. Hymes arrived at 1664 Greengarden. (Def.'s Mot. for Summ. J. ¶ 28; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 28.) Mr. Hymes entered the facility using the steps he later allegedly fell on. (Def.'s Mot. for Summ. J. ¶ 29; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 29.) These steps had just been "swept off" when Mr. Hymes entered the building and he did not notify anyone inside the building that the steps were icy or slippery. (Def.'s Mot. for Summ. J. ¶ 29-34; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 29-34.) After Mr. Hymes left the building, his left foot slipped on

the bottom step and he fell. (Def.'s Mot. for Summ. J. ¶ 34; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 34.)

On January 14, 2011, Plaintiffs Mr. Hymes and Pauline Hymes ("Mrs. Hymes") filed a Complaint in the Eastern District of Pennsylvania for negligence against Defendants Great Lakes Warehouse, Lake Erie Warehouse and Distribution Center, TIG, and Nestle, USA, Inc. Additionally, Mrs. Hymes brought suit against all the above-named Defendants for loss of consortium due to her husband's injuries. TIG denies that any entity by the name of "Great Lakes Warehouse" is in possession of the premises mentioned above and denies knowledge of an entity with that name. (Def.'s Answer ¶ 4.) TIG also denies that "Lake Erie Warehouse and Distribution Center" is a correct designation for TIG itself. (Def.'s Answer ¶ 5.) The claims against Nestle USA, Inc. were dismissed by stipulation of the parties on April 17, 2013. (Doc. 39.) After a period of discovery, TIG submitted the instant Motion for Summary Judgment, which was followed by supporting documents from both parties. The Court's analysis follows.

## II.  STANDARD OF REVIEW

Summary judgment is awarded only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney,* 689 F.3d 288, 292 (3d Cir. 2012). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Dee v. Borough of Dunmore,* 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *See Anderson,* 477 U.S. at 248; *Fakete v. Aetna, Inc.,* 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its' opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249 (citations omitted); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Communications, Inc.*, 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. *See, e.g., Love v. Rancocas Hosp.*, 270 F.Supp.2d 576, 579 (D.N.J. 2003); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 205 F.Supp.2d 324, 330 (D.N.J. 2002).

## III. DISCUSSION

This Court sits in diversity and therefore must apply state substantive law and federal procedural law. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This case does not involve matters governed by the Federal Constitution or acts of Congress, the alleged action here occurred in Erie,

Pennsylvania, and the contract at the center of this dispute is governed by the laws of the Commonwealth of Pennsylvania. (Compl. 7-19; Def.'s Mot. for Summ. J., Ex. B ¶ 24.) Pennsylvania state law will therefore govern.

TIG has filed a Motion for Summary Judgment arguing: (1) TIG was not responsible for the maintenance of the steps where plaintiff fell and this incident does not fall into any legal exceptions that would establish liability; and (2) Even if TIG had control over the steps and was responsible for maintaining them, it is still not liable for the Plaintiffs' injuries under Pennsylvania law because snow had just fallen and the steps were recently cleared. The Court will address these arguments below.

### A. The Hymeses' Claims of Negligence against TIG

#### *TIG was not Responsible for the Maintenance of the Steps Where Mr. Hymes Fell and Thus Owed No Duty of Care to the Plaintiffs*

For a plaintiff to prevail in a negligence action under Pennsylvania state law, the plaintiff must establish the defendant (1) owed a duty of care to the plaintiff, (2) that duty was breached, (3) the breach resulted in the plaintiff's injury, and (4) the plaintiff suffered an actual loss or damages. *Merlini ex rel. Merlini v. Gallitzin Water Authority*, 980 A.2d 502, 506 (2009). TIG's first argument deals only with the first prong of this analysis. TIG claims that it has no responsibility for what happened on the area in which Mr. Hymes fell because, under Pennsylvania law, an out-of-possession landlord such as TIG is not liable for injuries merely because it owns the land.

To support this statement, TIG offers the general rule that under Pennsylvania law "a lessor of land is not liable to the lessee or to others, including business invitees, for the physical harm caused by either natural or artificial conditions on the land which existed when the land was transferred or which arise after the transfer of possession." *Deeter v. Dull Corp., Inc*, 617

A.2d 336, 338-40 (1992) (citations omitted); *see also Dinio v. Goshorn*, 270 A.2d 203, 206 (1969) ("It is clear that a landlord out of possession is generally not liable for bodily harm sustained on his property by the lessee and those on the premises under the lessee's right"). TIG notes that this rule is based on the principle that "the law regards the lease transaction as the equivalent to the sale of the land for the term of the lease." *Deeter*, 617 A.2d at 338-40 (citations omitted). Thus, liability is "premised primarily on possession and control, and not merely [on] ownership" *Id.* at 339; *see also Knickerbocker v. City of Scranton*, 25 A.2d 152, 154 (1942) (stating that if an owner of a sidewalk is out of possession because of a lease and the sidewalk falls into disrepair, the tenant and not the owner is liable for injuries to a stranger using the sidewalk).

Additionally, the Pennsylvania courts have established a number of exceptions to the general rule of non-liability for out of possession landlords. Under these exceptions, an out of possession landlord may still be held liable (1) if he has reserved control over a defective portion of the demised premises, (2) if the demised premises are so dangerously constructed that the premises are a nuisance per se, (3) if the lessor has knowledge of a dangerous condition existing on the demised premises at the time of transferring possession and fails to disclose the condition to the lessee, (4) if the landlord leases the property for a purpose involving the admission of the public and he neglects to inspect for or repair dangerous conditions existing on the property before possession is transferred to the lessee, (5) if the lessor undertakes to repair the demised premises and negligently makes the repair, or (6) if the lessor fails to make repairs after having been given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises. *Henze v. Texaco, Inc.*, 508 A.2d 1200, 1202 (Pa. Super. Ct. 1986) (citations omitted). The Hymeses do not refute the general rule that out of possession landlords are not

liable for harm caused by property controlled by tenants, but instead argue that Mr. Hymeses situation falls into the first, fifth, and sixth exceptions to this general rule.

### 1. *The Reserved Control Exception*

The Hymeses first argue that TIG reserved control over the defective portions of the demised premises because a section of the lease agreement between TIG and Hardinger reserves the right of the landlord to, at all reasonable times during the lease, "enter the Premises to make inspections or repairs, or to show the Premises to prospective tenants or purchases." (Pls.' Mem. in Opp'n to Def.'s Summ. J., Ex. B ¶ 17.) In addition, the Hymeses point to another section of the lease which requires Hardinger to acquire TIG's approval before making improvements to the premises. (Pls.' Mem. in Opp'n to Def.'s Summ. J., Ex. B ¶ 18.) Finally, the Hymeses note that the lease requires the tenant to pay a pro-rated portion of "Common Area Maintenance" ("CAM") fees for services such as snow removal. (Pls.' Mem. in Opp'n to Def.'s Summ. J., Ex. B ¶ 19.) The Hymeses maintain that the CAM fees provision is silent as to where the common areas were or whether the steps where Mr. Hymes fell were part of the common area or not. They further argue that because the lease is silent as to the common areas, a reasonable factfinder could conclude that the steps where Mr. Hymes fell are part of the common area to be maintained by TIG.

The Court finds the Hymeses fail to present sufficient evidence to support these arguments and provide the factfinder with a dispute as to genuine issues of material fact. The simple fact that the TIG/ Hardinger lease contained a provision reserving the right of the landlord to inspect the property does not create a situation of reserved control over the property, nor do landlord repairs by themselves. *Henze*, 508 A.2d at 1202-03 (citations omitted). The TIG/Hardinger lease's provision requiring landlord approval for improvements to the property

also does not automatically confer control. A case cited by the Hymeses, *Jones v Levin*, does feature a situation in which a provision requiring the landlord's permission to structurally alter parking lot premises created a material issue for the factfinder regarding the issue of control of the premises. 940 A.2d 451, 455-59 (Pa. Super. Ct. 2007). This case can be distinguished, however, because unlike the current case, central to the *Jones* court's reasoning was the question of whether consideration existed for formation of the lease contract in the first place. *Id.* Additionally, plaintiff's injury was said to be caused by "a depression or irregularity" on the parking lot premises that allowed "water run-off and snow and ice to build up." *Id.* at 453. Therefore, structural changes would have been required to remedy the situation and the tenant would not have been able to complete those repairs without the landlord's permission. Here, there is no dispute as to the validity of the TIG/Hardinger lease and the landlord's permission would not have been necessary to correct snow and ice accumulation before Mr. Hymes' fall.

The fact that the TIG/Hardinger lease is silent as to which areas were the TIG-maintained "common areas" and which areas were not also does not create a genuine issue of material fact for the factfinder. Every fact witness presented by both parties with knowledge of the TIG/Hardinger relationship has testified that both TIG and Hardinger understood the TIG-maintained areas to only include the roadways and driveways leading up to the 1664 Greengarden property and not the property itself. (J. Benacci Dep. 21:2-23:2, 31:21-32:16; R. Benacci Dep. 19:24-21:19, 24:16-25:6, 27:1-28:23; H. Budd Dep. 12:24-15:7; J. Budd Dep. 12:18-15:22.) Pennsylvania law states "If the parties to a contract have started to perform the contract and their performance manifests a common manifestation of their understanding of the prior expression of agreement, this evidence will be given great weight in determining the meaning attributed to their expressions" *Herzog v. Herzog*, 887 A.2d 313, 316 (Pa. Super. Ct.

2005); *Tindall v. Friedman*, 970 A.2d 1159, 1166 (Pa. Super. Ct. 2009) (citations omitted). The Hymeses, meanwhile, present no evidence suggesting that TIG and Hardinger had some other interpretation of their agreement. Here, there is insufficient evidence from which a factfinder could determine that an ambiguity existed between TIG and Hardinger as to the location of the common areas. *See Fitzpatrick v. Natter*, 961 A.2d 1229, 1241-43 (2008) ("[W]hile the jury may draw reasonable inferences, it "may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but . . . there must be evidence upon which logically its conclusion may be based.") (citations omitted); *Jones v. Treegoob*, 249 A.2d 352, 354-55 (1969).

Finally, the Hymeses have failed to show that TIG, through its actions, exercised the requisite amount of control over the 1664 Greengarden property to be liable for Mr. Hymes' injury. Though it is undisputed that TIG reserved the right to inspect the property, witnesses presented by both parties with knowledge of the TIG/Hardinger relationship maintained that TIG never exercised this right. (J. Benacci Dep. 39:16-40:3; R. Benacci Dep. 31:7-16.) TIG also never ordered any of the deposed maintenance staff for the 1664 Greengarden property to clean any of the tenant areas. (H. Budd Dep. 14:7-16:4; J. Budd Dep. 12:19-15:7.) In order to suggest that TIG inspected tenant properties on a regular basis, the Hymeses cite the testimony of TIG's general manager, Joseph Benacci, in which he stated: "I do visit the tenants periodically. I'm in and out of their areas, so I know how they're keeping their areas as far as cleanliness and such. . . . Any snowy day I would be at that location every day *inspecting the roadway* to make sure that our responsibilities were being kept." (J. Benacci Dep. 39:23-41:12.) (emphasis added). This testimony, however, is completely consistent with other evidence presented by TIG stating that TIG was responsible for maintaining common areas which included the roadways and driveways

9

leading to the tenant properties while tenants were responsible for maintaining the properties themselves.

### 2. *The Negligent Repair Exception*

Secondly, the Hymeses argue TIG had undertaken repairs on the steps and could have repaired the steps in such a negligent fashion that it increased its hazardous nature. More specifically, the Hymeses state that it was possible TIG used an inappropriate or high gloss product on the grated metal stairs, thus magnifying its potential as a slippery surface in icy conditions. (Pls.' Mem. in Opp'n to Def.'s Summ. J. 5.) To support this possibility, the Hymeses point to Joseph Benacci's testimony in which he stated that staff under TIG's control painted doors and steps on tenant lots in the summer. (J. Benacci Dep. 34:25-35:24.) However, the Hymeses' argument isn't supported with any evidence suggesting negligent repair took place or citations to Pennsylvania law. Moreover, Joseph Benacci said he did not even recall if the painting of the steps occurred before or after Mr. Hymes' fall in January of 2009. (Id.) The Hymeses also fail to present any records of repair or analysis of samples from the stairs. Thus, the Hymeses fail to present a sufficient amount of evidence for this exception to apply.

### 3. *The Notice and Failure to Repair Exception*

Finally, the Hymeses claim that TIG failed to make repairs after it was given notice of and a reasonable opportunity to remedy a dangerous condition existing on the leased premises. To support this contention, they cite Robert Benacci's testimony, in which he stated: "Erie, Pennsylvania, gets snow, quite a lot of snow." (R. Benacci Dep. 36:2-5.) Additionally, the Hymeses cited *Juarbe v. City of Philadelphia*, a case in which a plaintiff slipped in petroleum products on the sidewalk of a gas station, causing her to prematurely give birth. 431 A.2d 1073 (Pa. Super. Ct. 1981). There, the Pennsylvania Superior Court reversed the trial court's grant of

summary judgment to defendant Exxon when it found that Exxon, as an out of possession landlord, could still be liable for the injury because it reserved control of the leased property. *Id.* at 1080-81. The court found that this control occurred through Exxon's contractual demands to keep the premises clean, keep detailed records of the number of gallons of gasoline and other fuel sold, allow Exxon to inspect sales records and base the rent on the amount of fuel sold, purchase gas from Exxon while allowing Exxon the right to limit those supplies at will, operate the business in a safe and orderly manner, keep the premises open for a minimum number of hours per week, and allow frequent inspections from Exxon, among other things. Along with these directives came routine orders to fix any unsatisfactory conditions. *Id.* at 1076-81. Repeated violations of the sanitary standards would cause Exxon to refuse to renewal of the lease. *Id.* at 1080-81. The court found that Exxon may have had notice of the dangerous situation and failed to remedy it. *Id.* at 1081. Lastly, the court found that the lower court was in error as to the date of lease execution, and the hazardous condition may have even predated the lease itself, making it a condition already in existence when the property was first transferred. *Id.* at 1081.

The facts of this case, however, are far different from those presented in *Juarbe*. There, the question of whether Exxon had such a substantial oversight presence in the gas station property was central to the court's analysis. The court noted:

> According to the evidence, the slippery condition of the walk existed during a significant time period before Plaintiff's fall, and Exxon inspections occurred during that time. The evidence, while not clearly establishing liability, nevertheless does suggest possible liability if a jury were to find Exxon maintained control over the property and was negligent in its exercise of that control by allowing the substance to remain on the walk.

*Id.* at 1081. Here, TIG's significant control over the area in which the accident happened is absent. There is no assertion put forward that TIG supervised tenant business performance,

supplied tenants, routinely inspected tenant property, ordered frequent changes of tenants or performed the kind of invasive oversight that formed the crux of the court's analysis in *Juarbe*.

Moreover, in *Juarbe*, the court notes that the slippery condition existed for "a significant time period" before the plaintiff's fall and existed while Exxon performed inspections, effectively giving Exxon notice of the condition. *Id.* at 1081. Here, the parties agree that the snowfall in Erie had stopped only fifteen minutes before Mr. Hymes arrived at 1664 Greengarden and that Mr. Hymes used those same steps while entering the building and did not notify anyone that they had been icy or slippery. (Def.'s Mot. for Summ. J. ¶ 29-33; Pls.' Mem. in Opp'n to Def.'s Summ. J. ¶ 29-33.) Mr. Hymes also testified to having no difficulty navigating those same steps on his way into the building. (J. Hymes & P. Hymes Dep. 81:6-10.)

The Hymeses further claim that TIG was on notice generally because Joseph Benacci claimed to visit the sites and because Erie, Pennsylvania usually experiences a significant amount of snowfall. The "hills and ridges" doctrine encapsulated in Pennsylvania law, however, states that:

> There is no absolute duty on the part of a landowner to keep his premises and sidewalks free from snow and ice at all times. These formations are natural phenomena incidental to our climate. . . . Snow and ice upon a pavement create merely transient danger and the only duty upon the property owner or tenant is to act within a reasonable time after notice to remove it when it is in a dangerous condition.

*Rinaldi v. Levine*, 176 A.2d 623, 625-26 (1962); *Bacsick v. Barnes*, 341 A.2d 157, 160-61 (1975). Countering this, the Hymeses cite *Harvey v. Rouse Chamberlin, Ltd.*, for the proposition that this rule does not apply when the dangerous condition was the result of "human intervention," and note that the steps where Mr. Hymes fell had recently been swept. 901 A.2d 523, 527 (Pa. Super. Ct. 2006). This argument also fails. The Hymeses offer no evidence identifying who swept the steps nor do they offer any evidence suggesting a causal connection

between the sweeping of the steps and the actual fall. The Hymeses merely note that it is possible that the sweeping uncovered or produced the ice on which Mr. Hymes fell. This is unlike the situation in *Harvey*, where it was an established fact that the ice patch in which the plaintiff fell was caused by the defendant's plowing. *Id.* at 525-26.[2]

### 4. *The Expert Report*

The Hymeses provide an expert report from someone they state is a Certified Snow Professional named Richard Arlington ("Mr. Arlington"). They claim that his report creates genuine issues of material fact for the factfinder because his expert report maintains that TIG "had a duty to either perform or ensure the performance of this service to industry standards of the snow and ice industry." (Pls.' Mem. in Opp'n to Def.'s Summ. J. 5-6; Pls.' Ex. H.) The report also states that "due to [TIG]'s right to inspect they were aware of the fact that a hazardous condition was being left unattended at this location. The incident was a foreseeable consequence of this inaction on the part of [TIG] and Tenants." (Pls. Ex. H 5.)

It is true that an expert witness may be used by parties to help establish or expand upon issues with which the expert has knowledge. Here however, Mr. Arlington appears to be opining on Pennsylvania law, which clearly states that out of possession landlords do not have a duty to maintain tenant property. *Deeter*, 617 A.2d at 338-40. The Hymeses do not succeed in making the case that this situation falls into any exceptions to this rule. Moreover, the Court has already addressed the issue of notice above. TIG's right to inspect the property and the fact that they were generally aware of the snowy conditions in Erie, Pennsylvania does not create an awareness

---

[2] Here, the Hymeses have failed to establish that TIG was responsible for the maintenance of the steps at 1664 Greengarden. However, even if the Hymeses managed to establish this, parties agree that snow had just fallen in the area fifteen minutes prior to Mr. Hymes' fall and Pennsylvania law places a duty on the property owner only to act "within a reasonable time after notice." *Rinaldi v. Levine*, 176 A.2d 625-26. The Court notes above that given the timing of the snowfall, TIG had no notice of the dangerous condition. The Hymeses also fail to produce evidence that would suggest the dangerous condition was caused by any human intervention as opposed to the natural falling of the snow.

of or a responsibility for the specific conditions which caused Mr. Hymes' fall. As a result, Mr. Arlington's report does not create genuine issues of material fact of the factfinder.

## IV. CONCLUSION

For the foregoing reasons, Defendant TIG's Motion for Summary Judgment will be granted.